NO. 07-03-0481-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



JULY 25, 2005



______________________________




TONY THEODORE GARCIA, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 316TH DISTRICT COURT OF HUTCHINSON COUNTY;



NO. 9086; HONORABLE JOHN W. LAGRONE, JUDGE



_______________________________



Before REAVIS and CAMPBELL, JJ. and BOYD, S.J. (1)



MEMORANDUM OPINION




 Upon a plea of not guilty, appellant Tony Theodore Garcia was convicted by a jury 
of intoxication manslaughter and punishment was assessed by the trial court at 20 years
confinement. Presenting two points of error, appellant contends (1) he was harmed by
counsel's ineffectiveness in stipulating to his blood alcohol test results and failing to object
to a purported expert witness's testimony regarding retrograde extrapolation, and (2) the
evidence was legally and factually insufficient to support his conviction. We affirm.

 After 9:00 p.m. on September 26, 2002, appellant and Jimmy Diaz drank beer and
appellant smoked marihuana at Diaz's house. According to Diaz, he and appellant each
drank seven to eight beers, appellant slept approximately four to four and one-half hours,
and the next morning each left the house in separate cars. At approximately 7:50 a.m.,
Kayla Dawn Cox was fatally injured when her car was hit from the rear by the car driven
by appellant at the intersection of Highway 136 and Deahl Road in Hutchinson County. By
count one, the Grand Jury indicted appellant for intoxication manslaughter and by count two
for recklessly causing the death of the victim. Upon conclusion of the evidence, the court
submitted the two counts to the jury via the charge and also submitted a charge of
criminally negligent homicide. 

 By his first point of error, appellant contends he was harmed by counsel's
ineffectiveness in stipulating to his blood alcohol test results and failing to object to a
purported expert witness's testimony regarding retrograde extrapolation. We disagree.

 Our review of representation by defense counsel is highly deferential, Tong v. State,
25 S.W.3d 707, 712 (Tex.Cr.App. 2000), cert. denied, 532 U.S. 1053, 121 S.Ct. 2196, 149
L.Ed.2d 1027 (2001), and requires that we engage a "strong presumption" that counsel's
actions fell within the wide range of reasonably professional assistance. See Strickland v.
Washington, 466 U.S.668, 687 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Also, appellant has
the burden to overcome the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy. Chambers v. State, 903 S.W.2d 21, 33
(Tex.Cr.App. 1995). 

 At trial, witness Rhoden, a licensed EMT, testified he could smell alcohol on
appellant six feet away and, in his opinion, appellant was intoxicated. Witness Espino
observed appellant stumbling around, smelled alcohol on him, and stated appellant was
"most definitely" intoxicated. Also, she testified appellant admitted he had stayed up all
night partying. In addition, one DPS trooper testified appellant had a strong smell of alcohol
and Trooper Vennell testified that, in his opinion, appellant was intoxicated even while he
was in the emergency room at Northwest Texas Hospital. Because a non-expert witness
may express an opinion that a driver was intoxicated, see Smithhart v. State, 503 S.W.2d
283, 285 (Tex.Cr.App. 1973), considering the non-expert witness testimony available to the
State, we are unable to conclude counsel's performance could not be considered sound
trial strategy. Point of error one is overruled.

 By his second point of error, appellant contends the evidence was legally and
factually insufficient to support the conviction. Specifically, he argues the State failed to
show his intoxication was the victim's cause of death as required by section 49.08(2) of the
Texas Penal Code Annotated (Vernon 2003). We disagree.

 When both the legal and factual sufficiency of the evidence are challenged, we must
first determine whether the evidence is legally sufficient to support the verdict. Clewis v.
State, 922 S.W.2d 126, 133 (Tex.Cr.App. 1996). It is a fundamental rule of criminal law
that one cannot be convicted of a crime unless it is shown beyond a reasonable doubt that
the defendant committed each element of the alleged offense. U.S. Const. amend. XIV;
Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp. 2004-05); Tex. Pen. Code Ann. §
2.01 (Vernon 2003). 

 In conducting a legal sufficiency review, we examine the verdict, after viewing the
evidence in the light most favorable to the prosecution, to determine whether any rational
trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573
(1979); Burden v. State, 55 S.W.3d 608, 612-13 (Tex.Cr.App. 2001). This standard is the
same in both direct and circumstantial evidence cases. Burden, 55 S.W.3d at 612-13. In
measuring the sufficiency of the evidence to sustain a conviction, we measure the elements
of the offense as defined by a hypothetically correct jury charge. Malik v. State, 953 S.W.2d
234, 240 (Tex.Cr.App. 1997). This is done by considering all the evidence that was before
the jury--whether proper or improper--so that we can make an assessment from the jury's
perspective. Miles v. State, 918 S.W.2d 511, 512 (Tex.Cr.App. 1996). As an appellate
court, we may not sit as a thirteenth juror, but must uphold the jury's verdict unless it is
irrational or unsupported by more than a "mere modicum" of evidence. Moreno v. State,
755 S.W.2d 866, 867 (Tex.Cr.App. 1988). 

 After conducting a legal sufficiency review under Jackson, we may proceed with a
factual sufficiency review. Clewis, 922 S.W.2d at 133. As an appellate court, we view all
the evidence without the prism of "in the light most favorable to the prosecution" and set
aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. Johnson v. State, 23 S.W.3d 1, 9 (Tex.Cr.App. 2000). We
must determine after considering all the evidence in a neutral light, whether the jury was
rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex.Cr.App. 2004). It is the exclusive province of the jury to determine the
credibility of the witnesses and the weight to be given their testimony, and unless the record
clearly demonstrates a different result is appropriate, we must defer to the jury's
determination. Johnson, 23 S.W.3d at 8. 

 Before determining whether the evidence is sufficient to support appellant's
conviction, we must review the essential elements the State was required to prove. In this
regard, the intoxication manslaughter statute provides in part:

 (a) A person commits an offense if the person:

 (1) operates a motor vehicle in a public place . . . ; and

 (2) is intoxicated and by reason of that intoxication causes the
death of another by accident or mistake.


Tex. Pen. Code Ann. § 49.08. As presented in Glauser v. State, 66 S.W.3d 307, 313
(Tex.App.--Houston [1st Dist.] 2000, pet. ref'd), here too, appellant correctly contends the
State must prove that his intoxication, not just operation of the vehicle, caused the fatal
accident.

 The accident occurred at 7:50 a.m., but appellant's blood sample was not taken until
10:11 a.m. on September 27, 2002. By his argument, appellant does not suggest he was
not operating his vehicle when it hit the car driven by the victim from the rear or that the
accident was caused by poor visibility or road or traffic conditions. Instead, he focuses his
challenge on his alleged state of intoxication at the time of the accident. In this regard,
appellant contends the toxicology lab report showing his alcohol-intoxication level to be
below the legal level of intoxication is controlling. Accordingly, we will review the sufficiency
of the evidence in the context of appellant's contention. 

 Appellant overlooks the testimony of witness Espino, a teacher at Borger ISD, who
testified about her observations at the scene of the accident. According to her testimony
which was admitted without objection, she stated, that in her opinion, appellant was most
definitely intoxicated when she talked with him at the scene of the accident. Moreover,
according to the witness, appellant stated "Well, this is what I get for staying up all night at
Jimmy's house and partying." The jury having been properly charged, the testimony of
Espino was sufficient evidence from which the jury could find beyond a reasonable doubt
that appellant caused the death of the victim by reason of intoxication. Concluding the
evidence is legally sufficient to support the conviction, we must now determine whether it
is factually sufficient. Johnson, 23 S.W.3d at 11.

 In our analysis of appellant's first point, we noted Texas law does not require that
appellant's state of intoxication be established by scientific evidence or expert testimony. 
Instead, the opinion of a non-expert witness may be admitted to establish that a person is
intoxicated. Smithhart, 503 S.W.2d at 285. Also, in discussing appellant's first point, we
reviewed the relevant testimony of two DPS troopers, an EMT, and witness Espino,
mentioned above. All of these witnesses testified that in their opinion, appellant was
intoxicated when they met with him after the accident. Noting that appellant does not direct
our attention to any contrary evidence, because the jury's verdict relied on its assessment
of the credibility of the witnesses, we defer to its findings and hold the evidence was
factually sufficient to support the jury's verdict that the victim's death was caused by
appellant's intoxication. Appellant's second point of error is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice



Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.



d assault; theft by deception; leaving the
scene of an automobile accident and two convictions for automobile theft. The offenses
were committed in three states, Missouri, Arkansas, and Oklahoma, over an eight year
period, 1988-1996.


 
          The charges for retaliation and failure to appear were tried in separate jury trials. 
One jury found Appellant guilty of the offense of failure to appear, found the enhancements
true, and assessed his punishment at life imprisonment.


 A separate jury found Appellant
guilty on the retaliation offense, found the enhancements true, and also assessed his
punishment at life imprisonment. At the request of the State, the trial court cumulated the
two life sentences and ordered Appellant to serve them consecutively.
Discussion
          The Eighth Amendment of the United States Constitution prohibits excessive bail
or fines as well as cruel and unusual punishment. See U.S. Const. amend. VIII. The
provision is applicable to the States through the Fourteenth Amendment; Furman v.
Georgia, 408 U.S. 238, 239, 92 S.Ct. 2726, 2727, 33 L.Ed.2d 346 (1972); Robinson v.
California, 370 U.S. 660, 666-67, 82 S.Ct. 1417, 1420-21, 8 L.Ed.2d 758 (1962), and flows
from the basic “‘precept of justice that punishment for crime should be graduated and
proportioned to [the] offense.’” Atkins v. Virginia, 536 U.S. 304, 311, 122 S.Ct. 2242, 2246,
153 L.Ed.2d 335 (2002), quoting Weems v. United States, 217 U.S. 349, 367, 30 S.Ct.
544, 549, 54 L.Ed.2d 793 (1910). 
          It is undisputed that the sentences imposed by the trial court were within the range
of punishment authorized by the Legislature. Furthermore, Texas courts have traditionally
held that, as long as the punishment assessed is within the range set by the Legislature
in a valid statute, the punishment is not excessive, cruel, or unusual. Delacruz v. State,
167 S.W.3d 904, 906 (Tex.App.–Texarkana 2005, no pet.). That said, Texas courts
recognize that a prohibition against grossly disproportionate sentences survives under the
federal constitution apart from any consideration whether the punishment assessed is
within the statute’s range. Id.; Buster v. State, 144 S.W.3d 71, 81 (Tex.App.–Tyler 2004,
no pet.); Davis v. State, 119 S.W.3d 359, 363 (Tex.App.–Waco 2003, pet. ref’d); Jackson
v. State, 989 S.W.2d 842, 846 (Tex.App.–Texarkana 1999, no pet.).



          Finding a federal constitutional principle of proportionality for criminal sentences
under the Eighth Amendment, the United States Supreme Court indicated that, in
determining the proportionality of a sentence, courts should be guided by the following
objective criteria: (1) the gravity of the offense and the harshness of the penalty; (2) the
sentences imposed on other criminals in the same jurisdiction; and (3) the sentences
imposed for commission of the same crime in other jurisdictions. Solem, 463 U.S. at 292,
103 S.Ct. at 3011.
          Also, in recognition of the important role of legislatures in establishing statutory
criminal penalties and trial courts in assessing punishment, the Solem Court indicated that
they should be accorded substantial deference, and that “a reviewing court rarely will be
required to engage in extended analysis to determine that a sentence is not constitutionally
disproportionate.” 463 U.S. at 290 n.16, 103 S.Ct. at 3010 n.16.
          Solem, however, is no longer controlling. Harmelin v. Michigan, 501 U.S. 957, 111
S.Ct. 2680, 115 L.Ed.2d 836 (1991); McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.),
cert. denied, 506 U.S. 849, 113 S.Ct. 146, 121 L.Ed.2d 98 (1992). See Wise v. State, 223
S.W.3d 548, 554 n.3 (Tex.App.–Amarillo 2007, pet. ref’d). 
          In Harmelin, the United States Supreme Court revisited the issue of whether the
Eighth Amendment provided a proportionality guarantee. Justice Scalia’s opinion, joined
by Chief Justice Rehnquist, determined the Eighth Amendment did not contain a
proportionality guarantee and rejected the Solem test. 501 U.S. at 962, 966, 111 S.Ct. at
2684, 2686. Justice Kennedy’s concurrence, joined by Justices O’Connor and Souter,
determined the Eighth Amendment encompassed a “narrow proportionality principle.” 501
U.S. at 997, 111 S.Ct. at 2702. Justice Kennedy’s concurrence recognized the Solem test
but determined the test was flexible, i.e., where a comparison of the crime with the
sentence did not give rise to an inference of gross disproportionality, a comparative
analysis of the challenged sentence with others in the same state and across the nation
was unnecessary. 501 U.S. at 1005, 111 S.Ct. at 2707. Justice White’s dissent, joined
by Justices Blackmun and Stevens, upheld Eighth Amendment guarantees of
proportionality and the Solem test. Justice Marshal’s dissent disagreed with Justice White
only insofar as Justice White’s dissent differed with his view that “capital punishment is in
all instances unconstitutional.” 501 U.S. at 1027, 111 S.Ct. at 2719. Accordingly, two
Justices rejected the proportionality principle and Solem’s test outright, three Justices
recognized a “narrow” proportionality principle and a modified Solem test, and four Justices
recognized the proportionality principle espoused in Solem and its three-part test. 
          In light of Harmelin, the Fifth Circuit Court of Appeals adopted a modified Solem test
conforming with Justice Kennedy’s concurrence. See McGruder, 954 F.2d at 316. Under
McGruder, a court first conducts a threshold comparison of the gravity of the offense
underlying the current conviction as well as the offenses underlying the prior convictions
against the severity of the sentence. Id. Only if the court infers the sentence is grossly
disproportionate to the offenses should the court then consider the remaining factors in the
Solem test. Id.
          The majority of Texas appellate courts have followed and applied the Fifth’s Circuit’s
McGruder analysis in addressing Eighth Amendment proportionality complaints. Alberto
v. State, 100 S.W.3d 528, 530 (Tex.App.–Texarkana 2003, no pet.); Bradfield v. State, 42
S.W.3d 350, 353 (Tex.App.–Eastland 2001, pet. ref’d); Hicks v. State, 15 S.W.3d 626, 632
(Tex.App.–Houston [14th Dist.] 2000, pet. ref’d); Dunn v. State, 997 S.W.2d 885, 891-92
(Tex.App.–Waco 1999, pet ref’d); Mathews v. State, 918 S.W.2d 666, 669
(Tex.App.–Beaumont 1996, pet. ref’d); Puga v. State, 916 S.W.2d 547, 549-50
(Tex.App.–San Antonio 1996, no pet.); Lackey v. State, 881 S.W.2d 418, 420-21
(Tex.App.–Dallas 1994, pet. ref’d). Two others acknowledge McGruder and Harmelin but
nevertheless apply the Solem factors in assessing the proportionality of sentences. See
Trevino v. State, 174 S.W.3d 925, 928-29 (Tex.App.–Corpus Christi 2003, pet. ref’d);
Simmons v. State, 944 S.W.2d 11, 14 (Tex.App.–Tyler 1996, pet. ref’d). We also adopt
the McGruder proportionality analysis. 
          Appellant contends his consecutive sentences of life imprisonment are not
proportionate to his offenses of retaliation and failure to appear and violate the
requirements of the Eighth Amendment. We think this argument ignores the essence of
the statute under which he was sentenced. Appellant was sentenced under the provisions
of § 12.42(d) of the Texas Penal Code. Under this statute, sentence is imposed to reflect
the seriousness of his most recent offense, not as it stands alone, but in light of prior
offenses. See Rummel v. Estelle, 445 U.S. 263, 276, 100 S.Ct. 1133, 1140, 63 L.Ed.2d
382 (1980). A repeat offender’s sentence is “based not merely on that person’s most
recent offense but also on the propensities he has demonstrated over a period of time
during which he has been convicted of and sentenced for other crimes.” Hicks v. State,
15 S.W.3d 626, 632 (Tex.App.–Houston [14th Dist.] 2000, pet. ref’d). Therefore, in
considering whether Appellant’s sentences are “grossly disproportionate,” we consider not
only the present offenses but also his criminal history. Vrba v. State, 69 S.W.3d 713, 724
(Tex.App.–Waco 2002, no pet.). 
          The offenses of retaliation and failure to appear are third degree felonies. The
prosecution of these offenses are intended to protect vital public interests. A central
purpose of the offense of retaliation “is to encourage a certain class of citizens to perform
vital public duties without fear of retribution.” Doyle v. State, 661 S.W.2d 726, 729
(Tex.Crim.App. 1983). Prosecution of the offense of failure to appear is intended to obtain
compliance with court orders to appear and promote the orderly administration of justice.
Here, Appellant threatened an arresting officer with bodily harm and ignored the trial court’s
order to appear and plead. Importantly, these crimes were committed only months after
Appellant was released from prison.
          Appellant’s continuous, criminal history spans nearly twenty years. His felonies
include crimes of violence (assault with a dangerous weapon and aggravated assault) as
well as crimes against the authority of prison officials (escape from a penal institution),
police (retaliation against a police officer), and the court (failure to appear). After escaping
from confinement, Appellant committed multiple felonies before he was returned to jail. 
He engaged in a high speed chase with police driving more than one hundred miles per
hour. During the chase, he played “chicken” with patrol cars attempting to block his path
and later bragged about his role in endangering the lives of police officers in pursuit and
the public. Appellant put a gun to the head of his wife and demanded sex. He fled the
scene of an accident, stole automobiles, and has been convicted for the illegal possession
of firearms and drug paraphernalia. He committed felonies while on probation and parole. 
The test, then, is whether his sentences are grossly disproportionate to the gravity of the
offenses upon which his sentences are based. 
          In Rummel v. Estelle, the United States Supreme Court held that it did not constitute
“cruel and unusual punishment” to impose a life sentence under the Texas “recidivist
statute,” now § 12.42(d) of the Texas Penal Code, upon a defendant who had been
convicted, successively, of fraudulent use of a credit card to obtain $80 worth of goods or
services, passing a forged check in the amount of $28.36, and obtaining $120.75 by false
pretenses. 445 U.S. at 285, 100 S.Ct. at 1145. 
          In McGruder, the Fifth Circuit Court of Appeals held that it did not constitute “cruel
and unusual punishment” to impose a life sentence without the hope of parole under a
habitual offender statute upon a defendant who had been convicted, successively, for
burglary of an automobile; armed robbery; burglary and larceny; and again for armed
robbery. 954 F.2d at 315. Here, at least, there is the possibility of parole. 
          Because the sentences are within the statutory range of punishment and evidence
was presented regarding his previous ten felonies, the juries’ assessments of Appellant’s
punishment is not prohibited as cruel, unusual, or excessive. Moreover, having compared
the life sentences with Appellant’s current convictions and prior criminal history, we
conclude the sentences are not grossly disproportionate in violation of the Eighth
Amendment. Neither did the cumulation of the sentences by the trial court violate the
Eighth Amendment. See Stevens v. State, 667 S.W.2d 534, 537 (Tex.Crim.App. 1984). 
Having determined the consecutive sentences are not grossly disproportionate, we find it
unnecessary to consider the remaining factors of the Solem test. Therefore, we hold
Appellant’s consecutive life sentences are not unconstitutionally disproportionate and
overrule his single contention. 
Conclusion
          Accordingly, both judgments of the trial court are affirmed.
 
                                                                           Patrick A. Pirtle 

                                                                                  Justice 



Publish.