NO. 12-03-00125-CR
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
REGINALD WICKWARE,                                §                 APPEAL FROM THE 
APPELLANT
 
V.                                                                         §                 COUNTY COURT AT LAW #3

THE STATE OF TEXAS,
APPELLEE                                                        §                 SMITH COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Following a jury trial, Reginald Wickware (“Appellant”) was convicted of misdemeanor
driving while intoxicated and sentenced to one year of confinement in the Smith County Jail. 
Appellant now challenges the legal and factual sufficiency of the evidence to support the conviction. 
We affirm.
 
Background
            Appellant was charged by information with driving and operating a motor vehicle while
intoxicated in a public place in Smith County, Texas. The information alleged that he
 
. . . did not have the normal use of his mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of these
substances or any other substance into [Appellant’s] body. . . .


The matter proceeded to a jury trial.

            Texas Department of Public Safety Trooper Cody Mitcham (“Mitcham”) testified that at
around midnight on November 23, 2002, he was parked on the shoulder of Highway 155, just north
of the Lake Palestine bridge, on traffic patrol. As Appellant’s vehicle passed by, Mitcham noticed
that the license plate light was not visible. Mitcham stopped Appellant and got out of his vehicle
to question Appellant from the driver’s side window. 
            Prior to the stop, Mitcham had only observed Appellant driving for ten to fifteen seconds and
his vehicle was not weaving. However, when Mitcham began questioning Appellant, he could smell
alcohol emanating from inside the vehicle and also noticed that Appellant had bloodshot eyes. He
did not see any open containers or anyone consuming an alcoholic beverage, but he did see an
unopened beer box. Mitcham asked Appellant to exit the vehicle and consent to a battery of field
sobriety tests. Appellant complied. 
            After Appellant exited the vehicle, Mitcham did not smell alcohol on Appellant’s breath or
clothing. Mitcham testified that Appellant “made it to the rear of the vehicle fine,” but that he could
see a loss of balance when Appellant was walking. When Mitcham performed the horizontal gaze
nystagmus (HGN) test, he noticed that Appellant had a lack of smooth pursuit in both eyes.


 
Mitcham also noticed that Appellant had distinct nystagmus at maximum deviation and that both of
Appellant’s eyes “jerked” prior to forty-five degrees. Mitcham said that the HGN test is indicative
of alcohol, PCP, inhalants, and CNS (central nervous system) depressants. Based on the results of
the HGN test, Mitcham believed that Appellant had exhibited six signs (three in each eye) of
intoxication. Mitcham then tested Appellant’s eyes for vertical nystagmus, which was present. 
Because of the vertical nystagmus, Mitcham believed Appellant was under the influence of drugs.
            Mitcham next asked Appellant to stand with one foot in front of the other with his hands
down by his side. He also asked him to perform the “nine-step-walk-and turn test” and to stand on
one leg with the other foot off the ground and count out loud. Based on his observations of
Appellant during these tests, Mitcham believed that Appellant had lost the normal use of his mental
and physical faculties and should not have been operating a motor vehicle because he was
intoxicated. Mitcham then arrested Appellant for driving while intoxicated. 
            Mitcham and Appellant reached the Smith County Jail at 1:30 a.m. When they arrived,
Appellant consented to a breath test, which came back negative for the presence of alcohol in his
blood. Appellant denied using any illegal drugs, but stated that he “took some pain medication at
10:35 for his tooth but he didn’t know what it [was].” At that time, Mitcham called Trooper Ricky
White (“White”), a drug recognition expert, to come to the jail to examine Appellant.
            White testified that he is an expert in determining whether someone is under the influence
of a particular drug other than alcohol. He described the training he underwent to receive the
certification and stated that he was taught how to identify seven categories of drugs: 1) CNS
depressants, 2) CNS stimulants, 3) hallucinogens, 4) PCP, 5) narcotic analgesics, 6) inhalants, and
7) cannabis. 
            White’s examination revealed that Appellant’s pulse and temperature were within normal
range, but his systolic blood pressure was a little bit low. White noticed Appellant had bloodshot
eyes and was unsteady on his feet, but that his speech was not slurred. When he performed the “lack
of convergence” test on Appellant, he did not find any indication of drug use.


 He also did not find
any nystagmus, but found a lack of smooth pursuit, which is one of six clues that Appellant had
ingested a depressant. In response to White’s questioning, Appellant stated that he had only taken
Tylenol and Advil. He refused White’s request for a urine sample.
            Appellant exhibited eyelid tremors, a condition that occurs with marijuana use. His pupils
were seven millimeters in diameter, whereas the normal range is three to 6.5 millimeters. White also
noticed that Appellant had “rebound dilation,” meaning that “[t]he pupil size goes from one size to
another size and back.” This is also an indicator for marijuana use. Based on his training and
experience, White believed that Appellant’s pupil size and rebound dilation demonstrated that
“there’s obviously been marijuana on board and it’s still effecting [sic] his clinical signs of the
person.”
            White observed large blisters at the back of Appellant’s tongue. This condition is consistent
with someone who has smoked an unfiltered marijuana or tobacco cigarette, or unfiltered crack pipe
or cocaine pipe because the heat from the burning material causes the taste buds on the back of the
tongue to raise up and become easily visible. However, White did not know whether such a
condition could be permanent and did not ask Appellant if he had been smoking unfiltered cigarettes. 
            When White asked Appellant to stand still with his head back and eyes closed, White noticed
that Appellant was swaying about an inch side to side and forward to back. White said that when
Appellant performed the “nine-step-walk-and-turn test,” he stopped during the pivot phase, which
is a clue to intoxication. 
            White finished testing Appellant at 2:32 a.m. He found no direct evidence that Appellant had
ingested any kind of medication or controlled substance. Based on his training, his experience, and
his evaluation of Appellant at the jail, White formed the opinion that “there was going to at least be
marijuana in [Appellant’s] system.” White also believed that Appellant could have ingested a
combination of drugs because the lack of smooth pursuit clue was inconsistent with marijuana use,
but was consistent with the use of either a depressant, inhalant, PCP, or a combination of all four
drugs. 
            The jury found Appellant guilty, and the court sentenced Appellant to one year of
confinement in the Smith County Jail. This appeal followed.
 
Legal and Factual Sufficiency of the Evidence
            Appellant argues that the evidence adduced at trial was legally and factually insufficient to
support the State’s contention that he was intoxicated on the morning of November 23. 
Standard of Review
            Legal sufficiency is the constitutional minimum required by the Due Process Clause of the
Fourteenth Amendment to sustain a criminal conviction. See Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-787, 61 L. Ed. 2d 560 (1979); see also Escobedo v. State, 6 S.W.3d
1, 6 (Tex. App.—San Antonio 1999, no pet.). The standard for reviewing a legal sufficiency
challenge is whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; see also Johnson v.
State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The evidence is examined in the light most
favorable to the jury’s verdict. See Jackson, 443 U.S. at 320, 99 S. Ct. at 2789; Johnson, 871
S.W.2d at 186. A successful legal sufficiency challenge will result in rendition of an acquittal by
the reviewing court. See Tibbs v. Florida, 457 U.S. 31, 41-42, 102 S. Ct. 2211, 2217-218, 72 L. Ed.
2d 652 (1982).
            When reviewing the factual sufficiency of the evidence, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is
so obviously weak as to undermine confidence in the jury’s determination, or the proof of guilt,
although adequate if taken alone, is greatly outweighed by contrary proof. Ortiz v. State, 93 S.W.3d
79, 87-88 (Tex. Crim. App. 2002); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We
will reverse the fact finder’s determination only if a manifest injustice has occurred. King v. State,
29 S.W.3d 556, 563 (Tex. Crim. App. 2000). This review must employ appropriate deference to
prevent an appellate court from substituting its judgment for that of the fact finder, and any
evaluation should not substantially intrude upon the fact finder’s role as the sole judge of the weight
and credibility to be given to the testimony of the witnesses. Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996).
            A person commits the offense of driving while intoxicated if he operates a vehicle while
intoxicated in a public place. Tex. Pen. Code Ann. § 49.04 (Vernon 2004). “Intoxicated” is defined
as
 
(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol,
a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances,
or any other substance into the body; or
 
(B) having an alcohol concentration of 0.08 or more.


Tex. Pen. Code Ann. § 49.01(2)(A), (B) (Vernon 2004). A witness does not have to be an expert
to testify that a person he observes is intoxicated by alcohol; therefore, lay opinion testimony by a
police officer that a person is intoxicated is probative evidence that a person was “drunk.” 
Henderson v. State, 29 S.W.3d 616, 622 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d). 
However, the rule as to whether a non-expert witness may testify whether a person is under the
influence of drugs is different. Smithhart v. State, 503 S.W.2d 283, 285 (Tex. Crim. App. 1973). 
The rationale is that intoxication by alcohol is “of such common occurrence” that its recognition
requires no expertise. Id. When a person is under the influence of drugs, expert testimony must
connect that person’s symptoms to a conclusion that he or she was under the influence of a drug and
was incapable of safely operating a vehicle. Id. at 286. Nevertheless, in the absence of direct
opinion testimony, such intoxication may be shown by circumstantial evidence. Id. at 285.
Analysis
            The evidence in the instant case demonstrates that after Appellant submitted a breath
specimen for analysis, both Mitcham and White ruled out any possibility that Appellant could have
been intoxicated by reason of alcohol. Therefore, to survive a legal sufficiency challenge, the
evidence must show that a rational trier of fact could have found that Appellant was intoxicated by
reason of a controlled substance, a drug, a dangerous drug, a combination of two or more of those
substances, or any other substance.
            White, a certified drug recognition expert, examined Appellant at the Smith County Jail and
found that Appellant exhibited the following conditions that indicated drug use: 1) horizontal gaze
nystagmus, 2) eyelid tremors, 3) rebound dilation of the pupils, 4) blisters on the back of the tongue,
5) bloodshot eyes, 6) unsteady feet, 7) swaying while his head was tilted back with his eyes closed,
and 8) stopping during the pivot phase of the nine-step-walk-and-turn test. Taking all of these
indicators into consideration, White believed that Appellant did not have the normal use of his
mental and physical faculties by reason of the introduction of one or more substances into
Appellant’s body. Therefore, based upon White’s testimony, a rational trier of fact could have found
the essential elements of driving while intoxicated beyond a reasonable doubt.
            With regard to the factual sufficiency of the evidence, the record demonstrates that Appellant
did not introduce any evidence to show that he had not ingested any substances that would impair
his mental and physical faculties on the morning of November 23. Our review of the record
demonstrates that the blisters on the back of Appellant’s tongue may have been caused by smoking
an unfiltered tobacco cigarette as opposed to an unfiltered marijuana cigarette, that Appellant’s vital
signs were normal, and that he passed the “lack of convergence” test. However, the evidence
supporting the jury’s determination that Appellant was intoxicated is not so obviously weak, nor
does the contrary evidence so clearly outweigh the supporting evidence, as to render Appellant’s
conviction clearly wrong and manifestly unjust.
            Accordingly, Appellant’s sole issue is overruled.
 
Conclusion
            Based upon our review of the record, we hold that the evidence is legally and factually
sufficient to support Appellant’s conviction for driving while intoxicated. Therefore, the judgment
of the trial court is affirmed.
 
 
 
                                                                                                    SAM GRIFFITH 
                                                                                                               Justice
 
 
Opinion delivered June 30, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.



















(DO NOT PUBLISH)