# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-08-00566-CR

**Marie Louise Ouellette, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM COUNTY COURT AT LAW NO. 3 OF WILLIAMSON COUNTY
## NO. 06-7243-3, HONORABLE DONALD HIGGINBOTHAM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw the opinion and judgment dated May 20, 2010, and substitute the following opinion and judgment in their place. We deny appellant's motion for rehearing.

A jury found appellant Marie Louise Ouellette guilty of driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04(a) (West 2003). The trial court found the enhancement paragraph true, *see id.* § 49.09(a) (West Supp. 2008), sentenced her to 365 days in the Williamson County jail, and assessed a fine of $4,000. Finding the evidence factually sufficient to support Ouellette's conviction and no error in the jury charge, we affirm the judgment of the trial court.

*Background*

On August 30, 2006, Ouellette rear-ended a car that was stopped at a traffic light. Officer Timothy Little responded to the 911 call. He noticed the odor of alcohol on Ouellette's breath and observed that she had glassy eyes, that her balance was off, and that her speech was slurred. After initially denying that she had consumed alcohol, Ouellette eventually admitted to drinking a glass of wine.

At Little's request, Officer Richard Mabe, an officer with the DWI task force unit, arrived on the scene. At the time, Mabe had approximately ten years of experience with the Austin Police Department, including six years of experience with the DWI task force. Mabe first spoke with Little and then with Ouellette, confirmed the signs of intoxication observed by Little, and continued Little's investigation. After initially refusing a field sobriety test, Ouellette eventually allowed Mabe to administer the Walk and Turn test. Ouellette exhibited four of eight clues of intoxication, only two of which are necessary to show intoxication. Mabe also administered the Horizontal Gaze Nystagmus (HGN) test. Ouellette exhibited all six clues, only four of which are necessary to show intoxication. Mabe then arrested Ouellette. Following her arrest, Ouellette was read the DWI statutory warning and refused to provide either a breath or blood sample.

After Ouellette was arrested, Officer Little conducted a search of Ouellette's vehicle. He discovered an unlabeled pill bottle containing several different types of pills. Some of the pills were identified as Soma and Darvocet. Ouellette admitted that the pills were hers, but stated that she had not taken them in the past month.

2

On October 6, 2006, Ouellette was charged by information with driving while intoxicated, second offense. *See id.* §§ 49.04(a), 49.09(a). On April 1, 2008, her case was tried to a jury, which found her guilty as charged. On September 2, 2008, the trial court found the enhancement paragraph to be true and sentenced Ouellette to confinement in the Williamson County Jail for 365 days and assessed a $4,000 fine. The jail time and $3,200 of the $4,000 fine were probated for a period of fifteen months. This appeal followed.

*Analysis*

In her first point of error, Ouellette argues that the evidence is factually insufficient to support her conviction. In evaluating the factual sufficiency of the evidence, we view all the evidence in a neutral light and will set aside the verdict only if we are able to say, with some objective basis in the record, that the conviction is clearly wrong or manifestly unjust because the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson v. State*, 204 S.W.3d 404, 414-17 (Tex. Crim. App. 2006). We cannot conclude that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict, and we do not intrude upon the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See id.* at 417; *Fuentes*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The fact-finder may choose to believe all, some, or none of the testimony presented. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991); *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, no pet.). In our review, we discuss the evidence that, according to appellant, undermines the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

After citing to evidence "tending to prove intoxication," Ouellette argues that the video of the scene of the arrest presents conflicting evidence, showing that Ouellette was "alert and oriented," that her speech was "very clear" and "not slurred," and that there were only a few instances of "slight swaying." According to Ouellette, the "great weight and preponderance of the evidence contained in this video recording so greatly outweighs the evidence given by officers Mabe and Little as to make the guilty verdict in this case manifestly unjust."

Even if the video appears to show that, as Ouellette suggests, she had reasonable control over her conduct and senses, the overwhelming evidence supports the conclusion that she was intoxicated. Ouellette collided with a stopped car. Responding officers detected the odor of alcohol on Ouellette's breath, and she admitted to consuming some alcohol. Ouellette exhibited glassy eyes, slurred speech, irrational behavior, and swaying. She initially refused to perform all field sobriety tests. She eventually agreed to perform the Walk and Turn test, on which she exhibited four of eight clues of intoxication, only two of which are required to show intoxication. Ouellette also exhibited all six clues of intoxication on the Horizontal Gaze Nystagmus test, only four of which are required to show intoxication. She refused both a breath sample and a blood test.

Even if Ouellette appears to be "alert and oriented" and in control of her speech and movement on the video, the overwhelming evidence supports the jury's conclusion that she was intoxicated. Thus, factually sufficient evidence supports the judgment of conviction, and we overrule Ouellette's first point of error. *See Watson*, 204 S.W.3d at 414-17.

In her second point of error, Ouellette argues that the trial court erred by instructing the jury:

4

Intoxicated means not having the normal use of physical or mental faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into the body.

According to Ouellette, there was no evidence to support a conviction for being intoxicated by way of drug consumption, and specifically, there was no testimony—expert or otherwise—as to whether the particular drugs found in Ouellette's vehicle could have an intoxicating effect or whether Ouellette's actions, demeanor, and conduct were consistent with being under the influence of drugs or under the influence of a combination of drugs and alcohol.

When reviewing allegations of charge error, an appellate court must undertake a two-step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 731-32 (Tex. Crim. App. 1994). When a timely objection is made, error in the jury charge requires reversal if the error caused "some harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). In making this determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

The issue here is whether the jury should have been charged that intoxication could be caused by a drug as a possible intoxicant. The substance that causes intoxication is not an element of driving while intoxicated, *see* Tex. Penal Code Ann. § 49.04(a), and thus, the State can prove intoxication without proof of the type of intoxicant, *see Gray v. State*, 152 S.W.3d 125, 132 (Tex. Crim. App. 2004). Ouellette, however, relies on *Smithhart v. State*, 503 S.W.2d 283

5

(Tex. Crim. App. 1973), for the proposition that some evidence of drug use, including reliable expert testimony as to how that drug use would affect a persons actions, demeanor, or conduct, was required before drugs could be included as a type of intoxicant in the jury charge. *Smithhart*, decided prior to the adoption of the legal sufficiency standard of review, is inapplicable to this case. *See Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979), and discussing legal sufficiency review as set out by United States Supreme Court in that case). Under a legal sufficiency standard of review, we consider all evidence properly admitted at trial, including evidence here that prescription drugs were present in Ouellette's vehicle and that Ouellette admitted that the medications were hers.[1] Officer Mabe testified as follows:

> When I asked her about the drugs, I think she said she hasn't had them in over a month; and she said I'll take a blood test to prove it. I said, so, you want to take a blood test? She said, yes, because I haven't taken any of those drugs in a month. I said, okay, you do understand, on the blood screen, they are going to check for alcohol also. I said, do you still want to take a blood test? She said, no.

Although Ouellette told Officer Mabe that she had not taken the drugs in the past month, there was evidence that the medications were in the car, were available to Ouellette, and were prescribed for her, and there was evidence that she had taken the medications in the past and she was intoxicated at the time of her arrest. Thus, even if the State had been required to prove the type of intoxicant, the charge that included drugs as a possible intoxicant was properly submitted to the jury. *See Waller v. State*, No. 05-09-00097-CR, 2009 Tex. App. LEXIS 9338, at *7-9 (Tex. App.—Dallas

---

[1] At trial, Ouellette did not object to the admission of any evidence relating to these drugs. No objection was made until after the close of evidence, at the charge conference.

Dec. 9, 2009, no pet.) (mem. op., not designated for publication) (holding no expert testimony necessary to support conviction of driving while intoxicated as a result of a drug or narcotic; evidence of arresting officer's experience and observations could support the conviction).

Even if there was error in the jury charge based on its inclusion of drugs as possible intoxicants, there was no harm. *See Almanza*, 686 S.W.2d at 171. It is undisputed that the recognition of alcoholic intoxication requires no specific expertise, and as discussed above, factually sufficient evidence supports Ouellette's conviction of driving while intoxicated by reason of her consumption of alcohol. Accordingly, we overrule Ouellette's second point of error.

Having overruled Ouellette's points of error, we affirm the judgment of conviction.

### *Motion for Rehearing*

Appellant Marie Louise Ouellette has filed a Motion for Rehearing complaining that the panel "failed to conduct a proper factual sufficiency review," and arguing that "it is not clear that the Court actually reviewed the videotape." Despite the fact that Ouellette did not include the videotape in the record, the Court ordered the videotape from the district court clerk and reviewed it prior to issuing the original opinion in this case. Ouellette argues that the videotape, by itself, is conclusive evidence that she had "the normal use of her mental and physical faculties" at the time of her arrest. We recognize that the videotape does not evidence any severe lack of control of Ouellette over her conduct and senses. However, the videotape is not conclusive on the question of whether she had reasonable control over her conduct and senses. The evidence on the videotape is subject to more than one reasonable interpretation with respect to Ouellette's level of control of

7

her conduct and senses. When viewed together with the other evidence in the case, there is sufficient evidence to support the jury's verdict.

_____

G. Alan Waldrop, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed on Motion for Rehearing

Filed: August 27, 2010

Do Not Publish

8